IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| JOEY K.,[1] | No. 2:22-cv-01747-HZ |
| Plaintiff, | OPINION & ORDER |
| v. | |
| COMMISSIONER, SOCIAL SECURITY ADMINISTRATION, | |
| Defendant. | |

Ari Halpern
Halpern Law Group, PC
62910 OB Riley Rd., Suite 100
Bend, OR 97703

Chad Hatfield
Hatfield Law, PLLC
8131 W. Klamath Ct., Suite D
Kennewick, WA 99336

    Attorneys for Plaintiff

---

[1] In the interest of privacy, this Opinion uses only the first name and the initial of the last name of the non-governmental party or parties in this case. Where applicable, this Opinion uses the same designation for a non-governmental party's immediate family member.

1 – OPINION & ORDER

Kevin C. Danielson
Assistant United States Attorney
District of Oregon
1000 SW Third Avenue, Suite 600
Portland, OR 97204

Erin Jurrens
Social Security Administration
Office of the General Counsel
701 Fifth Avenue, Suite 2900 M/S 221A
Seattle, WA 98104

        Attorneys for Defendant

HERNÁNDEZ, District Judge:

        Plaintiff Joey K. brings this action seeking judicial review of the Commissioner's final decision to deny disability insurance benefits ("DIB") and supplemental security income ("SSI"). This Court has jurisdiction pursuant to 42 U.S.C. § 405(g) (incorporated by 42 U.S.C. § 1383(c)(3)). The Court affirms the Commissioner's decision.

## PROCEDURAL BACKGROUND

        Plaintiff applied for DIB and SSI on July 25, 2019, alleging an onset date of December 29, 2015. Tr. 54.[2] His application was denied initially and on reconsideration. Tr. 68, 83, 100, 115.

        On October 19, 2021, Plaintiff appeared with counsel for a hearing before an Administrative Law Judge ("ALJ"). Tr. 33-53. On November 3, 2021, the ALJ found Plaintiff not disabled. Tr. 17-28. The Appeals Council denied review. Tr. 1.

//

//

---

[2] Citations to "Tr." refer to the page(s) indicated in the official transcript of the administrative record, filed herein as Docket No. 9.

2 – OPINION & ORDER

**FACTUAL BACKGROUND**

Plaintiff alleges disability based on schizoaffective disorder and depression. Tr. 55. At the time of his alleged onset date, he was 20 years old. Tr. 54. He has a high school diploma and past relevant work experience as a home attendant. Tr. 26.

**SEQUENTIAL DISABILITY EVALUATION**

A claimant is disabled if they are unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). Disability claims are evaluated according to a five-step procedure. *See Valentine v. Comm'r*, 574 F.3d 685, 689 (9th Cir. 2009) (in social security cases, agency uses five-step procedure to determine disability). The claimant bears the ultimate burden of proving disability. *Id.*

In the first step, the Commissioner determines whether a claimant is engaged in "substantial gainful activity." If so, the claimant is not disabled. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1520(b), 416.920(b). In step two, the Commissioner determines whether the claimant has a "medically severe impairment or combination of impairments." *Yuckert*, 482 U.S. at 140–41; 20 C.F.R. §§ 404.1520(c), 416.920(c). If not, the claimant is not disabled. *Id.*

In step three, the Commissioner determines whether the claimant's impairments, singly or in combination, meet or equal "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." *Yuckert*, 482 U.S. at 141; 20 C.F.R. §§ 404.1520(d), 416.920(d). If so, the claimant is conclusively presumed disabled; if not, the Commissioner proceeds to step four. *Yuckert*, 482 U.S. at 141.

In step four, the Commissioner determines whether the claimant, despite any impairment(s), has the residual functional capacity (RFC) to perform their "past relevant work." 20 C.F.R. §§ 404.1520(e), 416.920(e). If the claimant can perform past relevant work, the claimant is not disabled. If the claimant cannot perform past relevant work, the burden shifts to the Commissioner. In step five, the Commissioner must establish that the claimant can perform other work. *Yuckert*, 482 U.S. at 141–42; 20 C.F.R. §§ 404.1520(e)–(f), 416.920(e)–(f). If the Commissioner meets their burden and proves that the claimant can perform other work that exists in the national economy, then the claimant is not disabled. 20 C.F.R. §§ 404.1566, 416.966.

## THE ALJ'S DECISION

At step one, the ALJ determined that while Plaintiff had engaged in some periods of substantial gainful activity after his alleged onset date, there were continuous 12-month periods during the time at issue in which Plaintiff did not engage in substantial gainful activity. Tr. 20. Next, at steps two and three, the ALJ determined that Plaintiff has the following severe impairments: "schizoaffective disorder; social anxiety disorder; major depressive disorder." Tr. 20. However, the ALJ determined that Plaintiff's impairments did not meet or medically equal the severity of a listed impairment. Tr. 20-22. At step four, the ALJ concluded that Plaintiff has the residual functional capacity to perform a full range of work at all exertional levels with the following limitations:

> He is limited to performing simple, routine tasks with a Specific Vocational Preparation (SVP) of 2 or less. He can perform work involving only occasional and simple changes and no fast-paced type tasks. He can perform work involving only occasional and superficial interaction with the public and coworkers.

Tr. 22. Because of these limitations, the ALJ concluded that Plaintiff could not perform his past relevant work. Tr. 26. But at step five, the ALJ found that there are jobs that exist in significant

numbers in the national economy that Plaintiff can perform, such as "Janitor, Cleaner Industrial," "Cleaner," and "Cleaner II." Tr. 26-27. Thus, the ALJ concluded that Plaintiff is not disabled. Tr. 27.

## STANDARD OF REVIEW

A court may set aside the Commissioner's denial of benefits only when the Commissioner's findings "are based on legal error or are not supported by substantial evidence in the record as a whole." *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (internal quotation marks omitted). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (internal quotation marks omitted). The court considers the record as a whole, including both the evidence that supports and detracts from the Commissioner's decision. *Id.*; *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007). "Where the evidence is susceptible to more than one rational interpretation, the ALJ's decision must be affirmed." *Vasquez*, 572 F.3d at 591 (internal quotation marks and brackets omitted); *see also Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007) ("Where the evidence as a whole can support either a grant or a denial, [the court] may not substitute [its] judgment for the ALJ's.") (internal quotation marks omitted).

## DISCUSSION

Plaintiff argues that the ALJ erred by: (1) finding Dr. Jeff Clausel's opinion unpersuasive; (2) rejecting Plaintiff's subjective symptom testimony; and (3) finding that Plaintiff's impairments do not meet or equal a listing.[3] The Court disagrees.

---

[3] Plaintiff also argues that the ALJ erred by failing to incorporate all of Plaintiff's limitations in the hypothetical to the vocational expert. The Court finds this argument subsumed in the arguments regarding medical opinion evidence and Plaintiff's symptom testimony.

5 – OPINION & ORDER

I.     **Medical Opinion Evidence**

Plaintiff first argues that the ALJ erred in finding unpersuasive the medical opinion of Jeff Clausel, Ph.D. For claims filed on or after March 27, 2017, ALJs are no longer required to give deference to any medical opinion, including treating source opinions. Rules Regarding the Evaluation of Medical Evidence, 2017 WL 168819, 82 Fed. Reg. 5844-01 (Jan. 18, 2017); 20 C.F.R. §§ 404.1520c, 416.920c. Instead, the agency considers several factors. 20 C.F.R. §§ 404.1520c(a), 416.920c(a). These are: supportability, consistency, relationship to the claimant, specialization, and "other factors." 20 C.F.R. §§ 404.1520c(c)(1)-(5), 416.920c(c)(1)-(5). The "most important" factors in the evaluation process are supportability and consistency. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2).

Under this framework, the ALJ must "articulate . . . how persuasive [they] find all of the medical opinions" from each doctor or other source. 20 C.F.R. §§ 404.1520c(b), 416.920c(b)(2). In doing so, the ALJ is required to explain how supportability and consistency were considered and may explain how the other factors were considered. 20 C.F.R §§ 404.1520c(b)(2), 416.920c(b)(2). When two or more medical opinions or prior administrative findings "about the same issue are both equally well-supported . . . and consistent with the record . . . but are not exactly the same," the ALJ is required to explain how the other factors were considered. 20 C.F.R. §§ 404.1520c(b)(3), 416.920c(b)(3). "Even under the new regulations, an ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence." *Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022).

Dr. Clausel saw Plaintiff on February 28, 2020 for a psychological exam. *See* tr. 521-27. Plaintiff reported to Dr. Clausel that his schizoaffective disorder was under control with his

current medication regimen. Tr. 523. Dr. Clausel saw suggestions of a residual thought disorder. Tr. 524. Although Plaintiff denied delusions and audio hallucinations, Dr. Clausel suspected some symptom minimization. Tr. 525. Dr. Clausel also noted Plaintiff's blunted affect and subdued mood. Tr. 525. Dr. Clausel noted some difficulties with sustained concentration but found that Plaintiff was able to carry out 1, 2, and 3-step instructions. Tr. 524, 527. Dr. Clausel opined that Plaintiff was mild to moderately impaired in daily activities, but that he would be severely impaired when unmedicated. Tr. 523. He further opined that Plaintiff was moderate to severely impaired in his ability to engage in appropriate interaction. He opined that Plaintiff was largely unimpaired in concentration, attention, and persistence. Tr. 527.

The ALJ found Dr. Clausel's opinion somewhat persuasive. Tr. 25. The ALJ found the opinion "well supported by his own thorough mental status examination findings." Tr. 25. With only two exceptions, the ALJ found Dr. Clasuel's opinion consistent with the record and incorporated it in the RFC. Tr. 25.

First, the ALJ found that "the record does not support a limitation to only 3-step tasks, given [Plaintiff's] ability to live independently, manage his own medications, [and] pay bills." Tr. 25. The Court notes that Dr. Clausel's opinion did not limit Plaintiff to only 3-step instructions, but rather found Plaintiff capable of performing 1, 2, and 3-step tasks. *See* tr. 527. There is no evidence in the record showing that Plaintiff would be unable to perform tasks with more steps. The ALJ's finding that Plaintiff does not need to be limited to only 3-step tasks is supported by substantial evidence.

The ALJ also found "to the extent Dr. Clausel meant 'severely impaired' social interaction to be greater than moderate limitation in this area, this is not consistent with the record as a whole." Tr. 25. This is also supported by substantial evidence. As the ALJ noted,

7 – OPINION & ORDER

Plaintiff generally presented as cooperative and pleasant with good eye contact. *See* tr. 335, 338, 346, 426, 469, 471, 473, 484, 499, 500, 501, 677. Plaintiff testified that small crowds of people make him feel stressed, but he is able to exchange pleasantries with cashiers, for example. Tr. 42. Plaintiff also reported that while he often isolates and feels anxious around others, he gets along well with other people, including authority figures. Tr. 275, 306. The ALJ's finding that Dr. Clausel's opinion was somewhat persuasive is supported by substantial evidence.

## II.     Subjective Symptom Testimony

Plaintiff also argues that the ALJ erred in evaluating his subjective symptom testimony. The ALJ is responsible for evaluating symptom testimony. SSR 16-3p, 2017 WL 5180304, at *1 (Oct. 25, 2017). The ALJ engages in a two-step analysis for subjective symptom evaluation. *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012) (superseded on other grounds). First, the ALJ determines whether there is "objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Id.* (internal quotations omitted). Second, "if the claimant has presented such evidence, and there is no evidence of malingering, then the ALJ must give specific, clear and convincing reasons in order to reject the claimant's testimony about the severity of the symptoms." *Id.* (internal quotations omitted).

When evaluating subjective symptom testimony, "[g]eneral findings are insufficient." *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)). "An ALJ does not provide specific, clear, and convincing reasons for rejecting a claimant's testimony by simply reciting the medical evidence in support of his or her residual functional capacity determination." *Brown-Hunter v. Colvin*, 806 F.3d 487, 489 (9th Cir. 2015). Instead, "the ALJ must specifically identify the testimony she or he finds not to be credible and

must explain what evidence undermines the testimony." *Holohan v. Massanari*, 246 F.3d 1195 (9th Cir. 2001); *see also Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (The reasons proffered must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discount the claimant's testimony.").

Plaintiff testified that he cannot work a full-time job because he "struggle[s] with stress, and sometimes, [he feels] like quitting because [he feels] drained and tired and groggy." Tr. 39. Plaintiff further testified that in a stressful situation, he would likely shut down and leave. Tr. 40. Plaintiff testified that his mood varies and about twice a month he has bad days when he gets "more depressed" and "more forgetful." Tr. 44. On those days, Plaintiff finds it difficult to go to his stepfather's house or to get things done. Tr. 44.

The ALJ found that Plaintiff's "level of functioning is not as fully limiting as alleged." Tr. 23. The ALJ found Plaintiff's testimony inconsistent with "evidence of improved functioning with prescribed treatment; his activities of daily living; and the consistent, objective medical evidence available." Tr. 24.

Many of Plaintiff's most severe symptoms, including delusions and audio hallucinations, are well controlled with medication. Plaintiff reported to Dr. Clausel that, with medication, "I'm 100% better. It's completely gone with the medication." Tr. 523. Although Plaintiff has struggled with taking his medication consistently in the past, he testified that now, he always takes his medication. Tr. 45. Medical records confirm that Plaintiff has been compliant in taking his medication, both daily pills and monthly injections. Tr. 691. The ALJ's finding here is supported by substantial evidence.

Contradiction with a claimant's activities of daily living is also a clear and convincing reason for rejecting a claimant's testimony. *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir.

2008). There are two grounds for using daily activities to form the basis of an adverse credibility determination: (1) when activities meet the threshold for transferable work skills and (2) when activities contradict a claimant's other testimony. *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007). Plaintiff's activities of daily living meet both these grounds.

Since October 2016, Plaintiff has worked at least part-time as a home care provider for his stepfather. Tr. 23. From July 2019 to September 2019 and from January 2020 to March 2020, this work was performed at substantial gainful activity levels. Tr. 19. As the ALJ noted, Plaintiff's "ability to engage in substantial gainful activity after the alleged onset date tends to undermine his allegation of disabling mental health symptoms."[4] Tr. 23. While working as a home care provider, Plaintiff does chores such as cleaning the bathroom, washing dishes, taking out the trash, and sweeping floors. Tr. 271. He reminds his stepfather to take his medications. Tr. 271. Plaintiff also accompanies his stepfather grocery shopping once a month. Tr. 273.

In addition to demonstrating transferable work skills, Plaintiff's activities of daily living are inconsistent with an extreme degree of limitation. Plaintiff was able to travel to the Philippines in September 2019. Tr. 349. Plaintiff currently lives alone, manages his own medications, prepares meals, and does his own housework and yardwork. Tr. 302-03. Plaintiff reports no problem completing personal care tasks. Tr. 302. The ALJ's finding here is supported by substantial evidence.

---

[4] Plaintiff does not argue that these periods were unsuccessful work attempts nor is there evidence in the record to suggest that this work was performed under special work conditions. *See* tr. 19. Rather, the record suggests that Plaintiff limited his hours and income so that he remained eligible for Medicaid. *See* tr. 270 ("I can't work full time or make over the income limit of Medicaid because I will lose my health insurance if I do. Without medications, I lose my ability to think rationally and my symptoms come back.").

Mental status exams also show that Plaintiff's functioning is not as limited as alleged. Plaintiff generally presents with a flat, restricted, or blunted affect, but is often described as cooperative or pleasant. *See, e.g.*, tr. 338, 346, 426, 455. He generally presents with a good or stable mood. *E.g.* tr. 335, 346, 393, 403, 412, 426, 429, 442, 469, 471, 473, 484, 490, 497, 501, 549, 552, 681, 692. Plaintiff consistently demonstrates linear thought process. *E.g.* tr. 335, 475, 677, 681. Plaintiff often presents with limited insight and judgment but more recently has demonstrated good insight and judgment, especially regarding the importance of taking his medications. *Compare, e.g.*, tr. 335, 412, 416 *with, e.g.*, tr. 677, 681. Plaintiff displays normal attention and concentration as well as unimpaired memory. Tr. 392, 412, 420, 429, 442, 490, 551, 677, 681, 692. Accordingly, the ALJ's finding that Plaintiff's testimony is inconsistent with and unsupported by the medical record is clear, convincing, and supported by substantial evidence. The ALJ provided three clear and convincing reasons, each supported by substantial evidence, in discounting Plaintiff's subjective symptom testimony.

### III. The ALJ's Findings at Step Three

Plaintiff argues that the ALJ erred at step three of the sequential analysis. If a claimant meets or medically equals a listed impairment at step three of the sequential analysis, he is presumed disabled regardless of age, education, or work experience. 20 C.F.R. § 404.1520(a)(4)(iii), (d). An impairment, or combination of impairments, is medically equivalent to a listing "if it is at least equal in severity and duration to the criteria of any listed impairment," considering, "all evidence in [the] case record about [the] impairment(s) and its effects on [the claimant] that is relevant[.]" 20 C.F.R. § 404.1526(a), (c). "[T]he claimant's illnesses 'must be considered in combination and must not be fragmentized in evaluating their effects.'" *Lester v. Chater*, 81 F.3d 821, 829 (9th Cir. 1995) (quoting *Beecher v. Heckler*, 756 F.2d 693, 694–95 (9th

Cir. 1985)). "Listed impairments are purposefully set at a high level of severity because 'the listings were designed to operate as a presumption of disability that makes further inquiry unnecessary.'" *Kennedy v. Colvin*, 738 F.3d 1172, 1176 (9th Cir. 2013) (quoting *Sullivan v. Zebley*, 493 U.S. 521, 531 (1990)). "Listed impairments set such strict standards because they automatically end the five-step inquiry, before residual functional capacity is even considered." *Id.*

At step three, the ALJ considered whether Plaintiff's severe impairments of schizoaffective disorder, social anxiety disorder, and major depressive disorder met or medically equalled the severity of listings 12.03 (schizophrenia spectrum and other psychotic disorders), 12.04 (depressive, bipolar and related disorders), and 12.06 (anxiety and obsessive-compulsive disorders).[5] Tr. 20. Listings 12.03, 12.04, and 12.06 each require that a claimant meet all the criteria in Paragraph A (the medical criteria) and the criteria in either Paragraph B (the functional criteria) or Paragraph C (for "serious and persistent mental disorders"). 20 CFR Part 404, Subpart P, Appendix 1. The Court assumes for the sake of argument that Plaintiff meets the criteria in Paragraph A for each listing, and addresses only Paragraphs B and C, which are the same for each listing at issue.

Paragraph B evaluates how a claimant's mental disorder limits their functioning in four major areas: (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing oneself.

---

[5] Plaintiff's briefing argues that Plaintiff meets criteria for listings 12.03, 12.06, and 12.15 (trauma and stressor-related disorders). Pl.'s Br. 17. As Plaintiff has not been diagnosed with PTSD, the Court assumes listing 12.15 is a transcription error. However, even if Plaintiff argues that he meets listing 12.15, that argument fails for the same reasons detailed below, as the Paragraph B and Paragraph C criteria are the same. *See* 20 CFR Part 404, Subpart P, Appendix 1.

*Id*. To satisfy Paragraph B, a claimant must show extreme limitation[6] in one area or marked limitations[7] in two areas. *Id*.

The ALJ found that Plaintiff had "at most" mild limitations in understanding, remembering, or applying information. Tr. 21. This is supported by substantial evidence. Plaintiff's function reports stated that he can follow both written and spoken instructions well. Tr. 275. Plaintiff's mental status exams showed unimpaired memory. Tr. 420, 490. Dr. Clausel found that Plaintiff's "primary memory abilities were strong." Tr. 525.

The ALJ found that Plaintiff had moderate limitations in interacting with others. Tr. 21. This is also supported by substantial evidence. Although Plaintiff has "become more reclusive," he reported that he has no problem getting along with others and that gets along well with authority figures. Tr. 275, 306. In her function report, Plaintiff's mother confirmed this. Tr. 283. Dr. Clausel opined that Plaintiff was moderately to severely impaired in his ability to engage in appropriate social interaction. Tr. 527. As the ALJ noted, Plaintiff "generally presented on examination as cooperative and/or pleasant with good eye contact." Tr. 21; *see* tr. 335, 338, 346, 426, 469, 471, 473, 484, 499, 500, 501, 677.

The ALJ found that Plaintiff had "at most" moderate limitations in concentrating, persisting, or maintaining pace. Tr. 21. This is also supported by substantial evidence. In his function reports, Plaintiff stated that he can pay attention "for as long as needed," or for more than an hour. Tr. 275, 306. Dr. Clausel found Plaintiff's task focus and attention were fair, his task persistence was adequate, and his concentration was fair. Tr. 525. Mental status exams

---

[6] "You are not able to function in this area independently, appropriately, effectively, and on a sustained basis." *Id*.
[7] "Your functioning in this area independently, appropriately, effectively, and on a sustained basis is seriously limited." *Id*.

13 – OPINION & ORDER

generally showed normal attention and concentration. Tr. 393, 412, 420, 429, 442, 551, 677, 681, 692.

Finally, the ALJ found that Plaintiff had moderate limitations in adapting or managing himself. Tr. 21. This is also supported by substantial evidence. Plaintiff reported that he is easily discouraged by stress, but that he handles changes in routine well. Tr. 276. His mother reported that he "sometimes cannot handle stress . . . or changes in routine" due to his mood. Tr. 284. Dr. Clausel opined that Plaintiff had a mild to persistent impairment in independence. Tr. 526. As the ALJ noted, in July 2020, Plaintiff lived alone and was "independent with personal care tasks, preparing meals, doing chores, . . . going shopping, and paying bills." Tr. 302-03.

Because Plaintiff does not show extreme or marked limitations in any of the four areas in Paragraph B, Plaintiff's conditions do not satisfy Paragraph B.

Paragraph C describes mental disorders that are "serious and persistent." To satisfy Paragraph C, a claimant must have "a medically documented history of the existence of the disorder over a period of at least 2 years" with evidence of *both* (1) "Medical treatment, mental health therapy, psychosocial support(s), or a highly structured setting(s) that is ongoing and that diminishes the symptoms and signs of your mental disorder" *and* (2) "Marginal adjustment [or] minimal capacity to adapt to changes in [their] environment or to demands that are not already part of your daily life." 20 CFR Part 404, Subpart P, Appendix 1. Although Plaintiff argues that increased demands *would* lead to "marginal adjustment," he has not presented evidence showing that "changes or increased demands have led to exacerbation of [his] symptoms and signs and to deterioration in [his] functioning." *Id*. The ALJ's finding that Plaintiff does not satisfy Paragraph C is supported by substantial evidence.

Because Plaintiff fails to show that he satisfies either Paragraph B or C, his conditions do not meet or medically equal a listing. The ALJ's finding at this step is supported by substantial evidence.

## CONCLUSION

Based on the foregoing, the Commissioner's decision is AFFIRMED.

IT IS SO ORDERED.

DATED: December 8, 2023.

*Marco Hernández*
MARCO A. HERNÁNDEZ
United States District Judge